## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


**ANN L. MORROW, MA/LPCC, PC,**

> **Plaintiff,**

**vs.**                                                    **No.  1:15-cv-00026-WJ-WPL**


**THE STATE OF NEW MEXICO,**
**HUMAN SERVICES DEPARTMENT**
**OF THE STATE OF NEW MEXICO,**
**SANDRA CHAVEZ, QUALITY ASSURANCE**
**BUREAU CHIEF FOR THE MEDICAL ASSISTANCE**
**DIVISION OF THE HUMAN SERVICES DEPARTMENT,**
**SIDONIE SQUIER, FORMER CABINET SECRETARY**
**FOR HUMANS SERVICES DEPARTMENT OF THE**
**STATE OF NEW MEXICO, BRENT EARNEST,**
**CABINET SECRETARY FOR HUMAN SERVICES**
**DEPARTMENT OF THE STATE OF NEW MEXICO,**
**And JOHN DOES 1-10, in their individual capacities,**

> **Defendants.**

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
## FOR WHICH RELEIF CAN BE GRANTED (DOC. 49)

Plaintiff's Amended Complaint (Doc. 45) alleges two violations of federal statutory

rights under 42 C.F.R. § 455 which form the basis of Plaintiff's claims under 42 U.S.C. § 1983:

(1) Defendants Chavez, Squier, Earnest and John Does[1] suspended Medicaid payments without a

proper determination that there was a "credible allegation of fraud;" and (2) Defendants Earnest

and Squier had the discretion to direct HSD to grant Plaintiff a provider hearing at some point

---

[1] Plaintiff has not been able to discover the identities of other state actors who also may have been
involved in the alleged statutory violations given the stay of discovery entered by Magistrate Judge Karen
Molzen while Plaintiff's Motion to Remand (Doc. 5) was pending and Magistrate Judge William P.
Lynch's granting of Defendants' Motion to Stay Discovery (Doc. 31).  (Clerk's Minutes of 3/24/15 Initial
Sched. Conf. (Doc. 16); Order Staying Discovery (Doc. 37).)

since the payment suspension was no longer "temporary" and return the wrongfully suspended payments but failed to do so.  (Am. Compl. (Doc. 45), ¶¶ 9, 21.)  Those rights were clearly established by the plain language of the regulations—and at least Defendant Chavez's apparent knowledge of them—at the time of Defendant Chavez's, Squier's, Earnest's and John Does' actions in this case.

Moreover, the Medicaid provider agreement upon which Plaintiff's breach of contract claim is based incorporates those same federal rights under 42 C.F.R. § 455.  And, while Plaintiff is hopeful that its Declaratory Judgment Act claim will soon be moot, the requested relief of a provider hearing has yet to be scheduled by the New Mexico Fair Hearing Bureau.  Accordingly, the Court should deny Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 49).

## I.     THE REQUIREMENTS UNDER THE SOCIAL SECURITY ACT FOR MEDICAID PROGRAM INTEGRITY IN 42 C.F.R. §§ 455.12-23 CREATE FEDERAL RIGHTS ENFORCEABLE UNDER 42 U.S.C. § 1983.

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508-10 (1990).  In Maine v. Thiboutot, 448 U.S. 1, 4, (1980), the Supreme Court held that Section 1983 provides a cause of action for violations of federal statutes as well as the Constitution.  There are two exceptions to this rule:  "A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or (2) "'Congress has foreclosed such enforcement of the statute in the enactment itself.'"  Wilder, 496 U.S. at 508-10 (quoting Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 423 (1987)).

This Court, thus, must first determine whether the Medicaid state plan requirements for program integrity in 42 C.F.R. §§ 455.12-23 create "federal rights" enforceable under Section 1983.  "Such an inquiry turns on whether the provision in question was intend[ed] to benefit the putative plaintiff."  Wilder, 496 U.S. at 508-10 (citation and internal quotation marks omitted). "If so, the provision creates an enforceable right unless it reflects merely a congressional preference for a certain kind of conduct rather than a binding obligation on the governmental unit, or unless the interest the plaintiff asserts is too vague and amorphous such that it is beyond the competence of the judiciary to enforce."  Id. (internal quotation marks omitted; citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 19 (1981); Wright, 479 U.S. at 431-432).

The state plan requirements for program integrity[2] under 42 C.F.R. § 455.12 include the mandate that state Medicaid agencies must have methods for investigating cases of suspected fraud that "(1) [d]o not infringe on the legal rights of persons involved; and (2) [a]fford due process of law."  42 C.F.R. § 455.13.  State Medicaid agencies comply with these mandates by

---

[2] Section 6402(h) of the Patient Protection and Affordable Care Act amended Section 1903(i)(2) of the Social Security Act to provide that Federal Financial Participation in the Medicaid program,

> shall not be made with respect to any amount expended for an item or service (other than an emergency item or service, not including items or services furnished in an emergency room of a hospital) furnished—
>
> …
>
> by any individual or entity to whom the State has failed to suspend payments under the plan during any period when there is pending an investigation of a credible allegation of fraud against the individual or entity, as determined by the State in accordance with regulations promulgated by the Secretary for purposes of section 1395y(o) of this title and this subparagraph, unless the State determines in accordance with such regulations there is good cause not to suspend such payments.

42 U.S.C. § 1396b(i)(2)(C).  The Secretary then amended the payment suspension regulations in 42 C.F.R. § 455 pursuant to 42 U.S.C. § 1395y(o)(3), which mandates that "[t]he Secretary shall promulgate regulations to carry out this subsection and section 1396b(i)(2)(C) of this title."

conducting a preliminary investigation[3] into allegations of fraud or abuse to determine if there is

a sufficient basis to conduct a full investigation.  42 C.F.R. §§ 455.14-15.  A payment suspension

is mandated only when the state Medicaid agency has determined that there is a "credible

allegation of fraud," which is defined in 42 C.F.R. § 455.2 as:

> an allegation, which has been verified by the State, from any source, including but
> not limited to the following:…(1)fraud hotline complaints. (2) claims data mining.
> (3) Patterns identified through provider audits, civil false claims cases, and law
> enforcement investigations.  Allegations are considered to be credible when they
> have indicia of reliability and the State Medicaid agency has reviewed all
> allegations, facts, and evidence carefully and acts judiciously on a case-by-case
> basis.

Importantly, "fraud" is defined in 42 C.F.R. § 455.2 as "[A]n intentional deception or

misrepresentation made by a person with the knowledge that the deception could result in some

unauthorized benefit to himself or some other person [] incud[ing] any act that constitutes fraud

under applicable Federal or State law."  Fraud is not synonymous with the lesser evils of

"waste"[4] or "abuse. "[5]

These program integrity requirements are clearly intended to benefit Medicaid providers

like Plaintiff by protecting them from abuse of power and arbitrary imposition of payment

---

[3] According to Defendant Human Services Department's Deputy Counsel, Larry Heyeck, the preliminary
investigation should include a number of steps, including review of medical records by an expert and
interviews with patients and/or providers. (Medicaid Fraud, Waste and Abuse:  Follow the Money,
Heyeck, Larry (2013), relevant portions of which are attached as Exhibit A to Pf's Resp. to Mot. to
Dismiss (Doc. 29), at 20-21.)  The Court may take judicial notice that Defendant Human Services
Department ("HSD") produced the article as an exhibit in an administrative proceeding, FHB No. 14-PO-
10024, on October 3, 2014, and consider its contents admissions against HSD under Fed. R. Evid.
801(d)(2).

[4] "Overutilization of services or other practices that result in unnecessary costs."  Medicaid Fraud, Waste
and Abuse:  Follow the Money, Heyeck, Larry (2013), at 9.

[5] "Provider practices which are inconsistent with sound fiscal, business, or clinical practices and result in
an unnecessary cost to the Medicaid program, or in reimbursement of services that are not medically
necessary or that fail to meet professionally recognized standards for healthcare." Id. (citing 42 C.F.R. §
455.2).

suspensions.  The Center for Medicare and Medicaid Services ("CMS"), e.g., has stated in connection with implementation of the "credible allegation of fraud" standard:  "We continue to believe that State agencies must review all allegations, facts, and evidence carefully and act judiciously on a case-by-case basis when contemplating a payment suspension, *mindful of the impact that payment suspension may have upon a provider*."  76 Fed. Reg. 5932 (Feb. 2, 2011)[6] (emphasis added).  That impact can include "cash-flow shortages" and even providers "forced to close their doors" with beneficiaries deprived of services.  <u>Medicaid Fraud, Waste and Abuse: Follow the Money</u>, Heyeck, Larry (2013), at 20.

The same is true for the mandate in 42 C.F.R. § 455.23(c) that a payment suspension based upon a "credible allegation of fraud" shall only be "temporary and[7] will not continue after either [] the agency or the prosecuting authorities determine that there is insufficient evidence of fraud by the provider; [or] legal proceedings related to the providers alleged fraud are completed."  The obvious reason for "temporary" payment suspensions is to prevent a provider from being deprived of payments owed to it for services rendered and potentially going out of business (and the domino effect of recipients going without services) should the state Medicaid agency or law enforcement determine that there was no fraud.

---

[6] Available at https://www.federalregister.gov/articles/2011/02/02/2011-1686/medicare-medicaid-and-childrens-health-insurance-programs-additional-screening-requirements#h-51.

[7] The provisions in subsections (i) and (ii) are the outer-limits of what "temporary" can be as evidenced by the conjunction "and" after "temporary."  In other words, "temporary" is not coextensive with either the determination that there is insufficient evidence of fraud or the end of legal proceedings.  If that were so, then "temporary" could conceivably have no end if the state Medicaid agency and/or law enforcement put the provider's investigation at the bottom of the proverbial pile, as appears to have occurred in this case with a payment suspension now nearing four years.

Defendants misplace reliance on Hanson v. Wyatt, 552 F.3d 1148, 1158 (10th Cir. 2008), for the proposition that 42 C.F.R. § 455 does not create federal rights enforceable through Section 1983.  (Mot., at 6-7.)  There national guardsman Col. Hanson sued the Oklahoma Adjutant General Wyatt for an injunction to reinstate Col. Hanson to the Oklahoma Army National Guard after he had been removed.  The case had much to do with various military statutes and whether they created a private cause of action in and of themselves without discussion of whether they created federal rights enforceable under 42 U.S.C. § 1983.  Indeed, it does not appear that Col. Hanson even brought a Section 1983 claim.  While the Tenth Circuit noted "that Col. Hanson alleges a violation of constitutional due process, and he may be contending that the district court could exercise authority to enjoin conduct that infringes constitutional rights," they then decided:

> But we need not address the scope, or even existence, of such authority, because Col. Hanson's due-process claim is flawed on its face. The Fifth and Fourteenth Amendments to our Constitution forbid the deprivation of "life, liberty, or property, without due process of law."  Col. Hanson, however, cannot point to any protected liberty or property interest of which he has been deprived.

Thus, Hanson does not address the issue faced by the Court here of whether 42 C.F.R. § 455 creates federal rights enforceable under Section 1983.

Defendants similarly overplay their hand with Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1382, 191 L. Ed. 2d 471 (2015).  (Mot., at 7-8.)  There,

> [R]espondents [][,] providers of habilitation services to persons covered by Idaho's Medicaid plan [] sued petitioners—two officials in Idaho's Department of Health and Welfare—in the United States District Court for the District of Idaho, claiming that Idaho violates § 30(A) by reimbursing providers of habilitation services at rates lower than § 30(A) permits. They asked the court to enjoin petitioners to increase these rates.

Id.  The district court granted summary judgment in favor of the providers.  The Ninth Circuit affirmed, holding that the providers had "an implied right of action under the Supremacy Clause

6

to seek injunctive relief against the enforcement or implementation of state legislation."  Id., at
1383.

The Supreme Court reversed, holding that the Supremacy Clause does not imply a cause
of action to enjoin state officials from engaging in unconstitutional conduct such as the Medicaid
reimbursement rate-setting at issue.  Id.  The Supreme Court also held that § 30(A) of the
Medicaid Act prohibited a suit in equity against Idaho Medicaid officials because there was
already a remedy for that conduct—Health and Human Services Department's withholding of
federal Medicaid money to the Idaho Medicaid agency.  Id.

The Supreme Court did not address the issue of whether the Medicaid Act or any
regulations thereunder created federal rights enforceable under Section 1983.    That was not
something which the providers in that case claimed in the first place.  Thus, Armstrong does not
help Defendants either.

Unlike in Armstrong, here there is no remedy in 42 C.F.R. § 455 for redress of arbitrary
payment suspensions not based upon actual "credible allegations of fraud" and which are more
than "temporary."[8]  And there certainly is "rights containing" language in 42 C.F.R. § 455,
including the mandate that state Medicaid agencies must have methods for investigating cases of
suspected fraud that "(1) [d]o not infringe on the legal rights of persons involved; and (2)
[a]fford due process of law."  42 C.F.R. § 455.13.

---

[8] The "good cause" exceptions for payment suspensions in 42 C.F.R. § 455.23(e)-(f) do not count insofar
as the standards for granting "good cause" exceptions do not encompass questions of whether there was
sufficient evidence to support a finding of a "credible allegation of fraud" or the duration of the
suspension.  Moreover, New Mexico law specifically excludes from the provider fair hearing process in
NMAC § 8.352.3.9 payment suspensions based upon a credible allegation of fraud such that there is no
state-level "administrative review" available "when state law so requires" under 42 C.F.R. § 455.23.

Moreover, there is nothing in the Medicaid program integrity regulations (or otherwise in the Social Security Act which Plaintiff could find) that forbids recourse to Section 1983.  "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." <u>Wright</u>, 479 U.S. at 520-21 (internal quotation marks and citation omitted). "The burden is on the State to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." <u>Id.</u> (internal quotation marks and citation omitted).  "In the absence of such an express provision, we have found private enforcement foreclosed only when the statute itself creates a remedial scheme that is "'sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.'"  <u>Id.</u> (quoting <u>Middlesex County Sewerage Authority v. National Sea Clammers Assn.</u>, 453 U.S. 1, 20 (1981)).

The program integrity requirements for fraud investigations evidence "a binding obligation on the governmental unit" and thereby create enforceable federal rights.  <u>Wilder</u>, 496 U.S. at 508-10 (citation and internal quotation marks omitted).  The Court, therefore, should find that Plaintiff has stated a claim for violation of federal rights in 42 C.F.R. § 455.12-23 which are actionable under Section 1983.

## II.   PLAINTIFF'S FEDERAL RIGHTS WERE CLEARLY ESTABLISHED BY A PLAIN READING OF THE REGULATIONS AND AT LEAST DEFENDANT CHAVEZ'S APPARENT KNOWLEDGE OF THEM.

"In assessing whether the right was clearly established, we ask whether the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right."  <u>Casey v. W. Las Vegas Indep. Sch. Dist.</u>, 473 F.3d 1323, 1327 (10th Cir. 2007).  The Court may make a finding that the law is clearly established even if cases involving fundamentally similar facts are not available.  <u>Roska ex rel. Roska v.</u>

Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003) (citing Hope v. Pelzer, 536 U.S. 730, 740 (2002)).  As the Tenth Circuit noted, "a requirement of a case directly on point would quickly transform the qualified immunity standard to an absolute immunity standard in the vast majority of cases." Roska, 328 F.3d at 1248 (citation omitted).

There is no Supreme Court or Tenth Circuit precedent dealing with whether Plaintiff's asserted statutory rights to be free from an arbitrary payment suspension without a proper finding of a "credible allegation of fraud" and for the payment suspension to be "temporary" were clearly established.  But on February 17, 2012, when someone[9] in the Human Services Department made a determination that there existed a "credible allegation of fraud" against Plaintiff, those rights were clear as day in 42 C.F.R. § 455.  Indeed, Defendant Chavez even quoted the regulations at issue in her February 20, 2012 payment suspension letter to Plaintiff and attached a copy of 42 C.F.R. § 455.23.  See 2/20/12 Letter from Sandra Chavez to Plaintiff, attached as Exhibit B to Pf's Resp. to Mot. to Dismiss (Doc. 29).[10]  No reasonable official— much less one with apparent knowledge and understanding of the rights at issue like Defendant Chavez—could read 42 C.F.R. § 455.12-23 and believe that she could make a finding of a "credible allegation of fraud" without, e.g., performing an investigation under 42 C.F.R. § 455.14-15 to determine whether the allegations "have indicia of reliability" and "review[] all allegations, facts, and evidence carefully and act[] judiciously on a case-by-case basis" as required under 42 C.F.R. § 455.2.

---

[9] Defendant Chavez did not admit it was her in the first Motion to Dismiss but rather the Quality Assurance Bureau. (Mot. to Dismiss (Doc. 19), at 2.)  Defendants' reluctance to name names suggests that there may be other John Does involved in the decision to suspend Plaintiff's Medicaid payments whom Plaintiff should also be suing under Section 1983.  Plaintiff, accordingly, requests discovery to determine the universe of defendants and their understanding of the federal rights at issue before the Court makes a determination concerning whether any defendant is entitled to qualified immunity.

[10] Defendant Chavez's statements in the letter are admissions under Fed. R. Evid. 801(d)(2).

Accordingly, the Court should find that Plaintiff's rights under 42 C.F.R. § 455.12-23 to be free from an arbitrary payment suspension without a proper finding of a "credible allegation of fraud" and for the payment suspension to be "temporary" were clearly established.

**III.  THE MEDICAID PROVIDER AGREEMENT INCORPORATES HSD'S OBLIGATIONS IN 42 C.F.R. § 455 THROUGH "ARTICLE XIII – APPLICABLE LAW" AND BECAUSE THE STATE OF NEW MEXICO PREVIOUSLY ARGUED TO THE NEW MEXICO COURT OF APPEALS IN <u>STATE V. BEHAVIORAL HOME CARE</u> THAT MEDICAID PROVIDER AGREEMENTS INCORPORATE ALL MEDICAID LAWS AND REGULATIONS.**

The Medicaid provider agreement states in "Article XIII – Applicable Law" that "[t]his Agreement shall be governed by the laws of the State of New Mexico."  ([Doc. 49-5], at 5.) New Mexico law provides that "[a] contract incorporates the relevant law, whether or not it is referred to in the agreement."  <u>State ex rel. Udall v. Colonial Penn Ins. Co.</u>, 1991-NMSC-048, ¶ 30, 112 N.M. 123, 21, 812 P.2d 777, 784 (citing <u>Montoya v. Postal Credit Union</u>, 630 F.2d 745 (10th Cir. 1980)); <u>see also</u> <u>Cockrell v. Bd. of Regents of New Mexico State Univ.</u>, 2002-NMSC-009, 132 N.M. 156, 166, 45 P.3d 876, 886 (citing <u>Colonial Penn</u> and holding that "[t]he FLSA provisions are read into and become a part of every employment contract that is subject to the terms of the Act.")

Such "relevant law" includes the Medicaid Act and regulations promulgated thereunder, particularly 42 C.F.R. § 455.  In a similar case, <u>ABA, Inc. v. D.C.</u>, 40 F. Supp. 3d 153, 171-72 (D.D.C. 2014), [11] the federal district court concluded that a Medicaid provider had not shown a likelihood of success on the merits of its claim for breach of a Medicaid provider agreement with the District of Columbia's Medicaid agency based upon the requirement in 42 C.F.R. 455.23(b)

---

[11] The case is similar insofar as it involves a Medicaid payment suspension under 42 C.F.R. § 455.23.  It differs from the case at bar because it involved an application for a preliminary injunction based upon alleged violation of the Fifth Amendment and breach of contract.  It did not involve assertion of the federal rights under 42 C.F.R. § 455 which Plaintiff asserts here.

that a Medicaid agency give notice of a payments suspension to an affected provider within five days.  Although there was no express contractual provision to this effect, the federal district court noted that "the Medicaid Provider Agreements were subject to Federal law, including 42 C.F.R. § 455.23," and found that the Medicaid agency had complied with the five-day notice requirement such that the plaintiff could not prevail on its claim for breach of the Medicaid provider agreement.

This is consistent with Defendant State of New Mexico's position on appeal to the New Mexico Court of Appeals in State ex rel. King v. Behavioral Home Care, Inc., 2015-NMCA-035, 346 P.3d 377, 380, cert. dismissed sub nom. King v. Behavioral Home Care, 2015-NMCERT-004, 348 P.3d 695.  There the State alleged that the provider's billing for in-home care services provided by caregivers for whom the provider had not fully complied with the Caregivers Criminal History Screening Act constituted Medicaid fraud and breach of essentially the same form Medicaid provider agreement at issue in this case.  The State argued in its Brief-in-Chief to the Court of Appeals that "[a] Medicaid contract incorporates the relevant law, whether or not it is referred to in the agreement."  State's Brief-in-Chief, State of New Mexico v. Behavioral Home Care, Inc., NM Ct. App., No. 31,682, pertinent portions of which are attached as Exhibit A, at 32.  The State went on: "[t]he NM form contract PPA implements and incorporates by reference the federal and state regulations, in compliance with the CMS state approved plan."  Id., at 33.  And the State emphasized that "[t]he PPAs are form contracts which by their terms are meant to contain and implement all Medicaid laws and regulations.  Therefore the PPA (contract) must be construed to harmonize with the federal and state Medicaid statutes and regulations which they incorporate."  Id., at 37-38.

Now that the shoe is on the other foot with a provider suing the State and HSD for breach of the Medicaid provider agreement, they cannot retreat from the State's position in <u>Behavioral Home Care</u> that all Medicaid law and regulations are incorporated into the provider agreement to suit their convenience in this litigation.  <u>C.f.</u> <u>Citizens Bank v. C & H Const. & Paving Co.</u>, 1976-NMCA-063, 89 N.M. 360, 366, 552 P.2d 796, 802 (discussing judicial estoppel).[12]  Instead, the court should find that the State's obligations in 42 C.F.R. § 455 are incorporated into the Medicaid provider agreement under "Article XIII – Applicable Law" and hold the State and HSD to the State's prior position that all Medicaid laws and regulations are incorporated into the provider agreement.  The Court, therefore, should deny their request to dismiss Plaintiff's breach of contract claim.

## IV.   PLAINITFF'S DECLARATORY JUDGMENT ACT CLAIM IS NOT YET MOOT BECAUSE THE REQUESTED PROVIDER HEARING HAS NOT OCCURED.

Three years and nine months since HSD withheld in excess of $200,000 in Medicaid payments for Medicaid services which Plaintiff rendered, the New Mexico Attorney General finally cleared Plaintiff of fraud and referred the case back to HSD for handling.  Plaintiff specifically disputes the Attorney General's findings, HSD's overpayment demand, and that Plaintiff engaged in any wrongdoing.  Plaintiff's Declaratory Judgment Act claim should be

---

[12] "The doctrine of 'judicial estoppel' is a rule which estops a party from playing 'fast and loose' with the court during the course of litigation.  It is not, however, strictly a question of estoppel.  'Judicial estoppel' simply means that a party is not permitted to maintain inconsistent positions in judicial proceedings. Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>Citizens Bank</u>, 89 N.M. 360, 366, 552 P.2d 796, 802 (citation omitted).  While the State's 180-degree turn about from its position in <u>Behavioral Home Care</u> does not strictly satisfy all the elements of judicial estoppel, it certainly undermines the credibility of Defendants' argument for dismissal of Plaintiff's breach of contract claim.

moot in light of HSD's October 20, 2015 overpayment demand and Plaintiff's November 17, 2015 request for a provider hearing.  But the New Mexico Fair Hearings Bureau has yet to set a scheduling conference or fair hearing date, and therefore the claim is not yet moot.  The Court, therefore, should deny Defendant's request to dismiss the Declaratory Judgement Act claim until the requested provider hearing has actually taken place.

WHEREFORE, Plaintiff respectfully requests the Court to Deny Defendants Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted (Doc. 49).

Respectfully submitted:

**DAVIS & GILCHRIST, P.C.**

By._____
        Bryan J. Davis
        1005 Marquette Ave. NW
        Albuquerque, NM 87102
        Telephone: (505) 435-9908
        Facsimile: (505) 435-9909
        bryan@dglnm.com

        ***Attorneys for Plaintiff***

The undersigned certifies that a copy
of the foregoing was served on all
counsel of record via the CM/ECF
system on the date filed.

**By:**_____
        Bryan J. Davis

13